The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| T-MOBILE US, INC., <br><br> Plaintiff, <br><br> v. <br><br> SIMPLY WIRELESS, INC., <br><br> Defendant. | CASE NO. 2:21-CV-00525 RSM <br><br> **STIPULATED MOTION REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND ORDER** |

The parties hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter:

**A.  General Principles**

1.  An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2.  As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the

application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible.

**B.     ESI Disclosures**

Within 30 days of entry of this Order, or at a later time if agreed to by the parties, each party shall disclose:

1.     <u>Custodians.</u> The five custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under the custodian's control. If there are not five custodians that likely have discoverable information, the party shall disclose those custodians it has identified and inform the opposing party that there are not five custodians likely to have discoverable information.

2.     <u>Non-Custodial Data Sources.</u> A list of non-custodial data sources (*e.g.*, shared drives, servers), if any, likely to contain discoverable ESI related to this matter.

3.     <u>Third-Party Data Sources.</u> A list of third-party data sources maintained by the company, if any, likely to contain discoverable ESI related to this matter (*e.g.*, third-party email providers, mobile device providers, cloud storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4.     <u>Inaccessible Data.</u> A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B). Section (D)(3) below sets forth data sources and ESI which are not required to be preserved by the parties. Those data sources and ESI do not need to be included on this list.

C.  **ESI Discovery Procedures**

    1.  <u>On-site inspection of electronic media.</u> Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

    2.  <u>Search methodology.</u> No party shall be required to run searches if the party reasonably believes all responsive information can be located and produced without the need for utilizing search terms. If a party reasonably believes the producing party's production contains a gap or omission, the parties agree to meet and confer regarding options prior to the opposing party seeking the court's intervention to require the producing party to use search terms pursuant to the procedure outlined below.

    If search terms are utilized, then the parties shall timely confer to attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies, before any such effort is undertaken. The parties shall continue to cooperate in revising the appropriateness of the search methodology.

        a.  Prior to running searches:

            i.  The producing party shall disclose the data sources (including custodians), search terms and queries, any file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information. The producing party may provide unique hit counts for each search query.

            ii.  The requesting party is entitled to, within 14 days of the producing party's disclosure, add no more than 10 search terms or queries to those disclosed by the producing party absent a showing of good cause or agreement of the parties.

            iii.     The following provisions apply to search terms / queries of the requesting party.  Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided.  A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word.  The producing party may identify each search term or query returning overbroad results demonstrating the overbroad results and a counter proposal correcting the overbroad search or query. A search that returns more than 400 unique documents, excluding families, is presumed to be overbroad.

        b.     After production:  Within 21 days of the producing party notifying the receiving party that it has substantially completed the production of documents responsive to a request, the responding party may request no more than 5 additional search terms or queries.  The immediately preceding section (Section C(2)(a)(iii)) applies.

    3.     <u>Format.</u>

        a.     ESI will be produced to the requesting party with searchable text, in the format described in subsection (e) below.  Other acceptable formats may include native files, multi-page TIFFs (with a companion OCR or extracted text file), single-page TIFFs (only with load files for e-discovery software that includes metadata fields identifying natural document breaks and also includes companion OCR and/or extracted text files), and searchable PDFs upon agreement of the parties.

      b.    Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, database, audio/video files, and drawing files, will be produced in native format.

      c.    Each document image file shall be named with a unique number (Bates Number). File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where applicable, the revision history.

      d.    If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

      e.    The parties shall produce their information in the following format: single-page images and associated multi-page text files containing extracted text or with appropriate software load files containing all information required by the litigation support system used by the receiving party.

      f.    The full text of each electronic document shall be extracted ("Extracted Text") where possible and produced in a text file. The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

4.    <u>De-duplication.</u> The parties may de-duplicate their ESI collection across custodial and non-custodial data sources, and the duplicate custodian information removed during the de-duplication process tracked in a duplicate/other custodian field in the database load file.

5. <u>Email threading.</u>  The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies.  Upon reasonable request, the producing party will produce a less inclusive copy.

6. <u>Metadata fields.</u> The parties agree that only the following metadata fields need be produced to the extent it exists, is reasonably accessible and non-privileged: document type; custodian and duplicate custodians (or storage location if no custodian); author/from; recipient/to, cc and bcc; title/subject; email subject; file name; file size; file extension; original file path; date and time created, sent, modified and/or received; hash value; and confidentiality status (*e.g.*, Not Confidential, Confidential, Highly Confidential, etc.).

7. <u>Hard-copy documents.</u> Hard-copy documents should be produced in an electronic format.  The production of hard-copy documents will include a cross-reference file that indicates document breaks and sets forth the custodian or custodian/location associated with each produced document. Hard-copy documents will be scanned using Optical Character Recognition technology and searchable ASCII text files will be produced (or Unicode text format if the text is in a foreign language), unless the producing party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Each file will be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND ORDER                                                                PAGE - 6
(Case No. 2:21-CV-00525)

**D.     Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1. Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

2. The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)-(2)).

3. Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

   a.  Data only accessible by forensics, including but not limited to deleted, slack, fragmented, or other data.

   b.  Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

   c.  On-line access data such as temporary internet files, history, cache, cookies, and the like.

   d.  Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).

   e.  Back-up data that are duplicative of data that are more accessible elsewhere.

   f.  Server, system or network logs.

        g.      Data remaining from systems no longer in use that is unintelligible on the systems in use.

        h.      Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

        i.      Text Messages sent via Short Message Service (SMS) and/or Multimedia Messaging Service (MMS) (which are commonly referred to as "text messages") or chat messages sent between electronic devices., including messages sent via collaboration tools (*e.g.*, Slack, Microsoft Teams), but only to the extent that the party believes such categories contain no discoverable information that is not otherwise located within other preserved and discoverable categories.

**E.    Privilege**

    1.    A producing party shall create a privilege log of all documents fully withheld from production on the basis of a privilege or protection, unless otherwise agreed or excepted by this Agreement and Order. Privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title; and date created. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure. Privilege logs will be produced to all other parties no later than 30 days after delivering a final production. Attachments to privileged documents that are not independently privileged do not need to be separately logged; however, a copy of such attachments must be produced. For example, if a non-privileged document is attached to an attorney-client privileged communication, the attachment does not need to be logged, and if a copy of that attachment has been produced in discovery, no further action is required; if the attachment has not been produced

in discovery (*i.e.*, the copy attached to the privileged communication is the only copy), it should be produced with any metadata revealing information about the privileged communication to which it was attached redacted.

2. Redactions need not be logged so long as the basis for the redaction is clear on the redacted document.

3. With respect to privileged or work-product information generated after January 23, 2015, parties are not required to include any such information in privilege logs, except to the extent such communications are copied, sent to, or received from non-parties or non-party employees. Additionally, the parties are not required to log privileged documents related to other cases or otherwise unrelated to the instant case.

4. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

5. Pursuant to Fed. R. Evid. 502(d), the production of any documents in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law. Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party, and its production shall not constitute a waiver of such protection.

DATED: September 23, 2021

| | |
|---|---|
| /s/ *Jessica M. Andrade* | /s/ *Daniel A. Brown* |
| Jessica M. Andrade (WSBA 39297) | Daniel A. Brown (WSBA 22028) |
| POLSINELLI PC | WILLIAMS, KASTNER & GIBBS PLLC |
| 1000 2nd Avenue, Suite 3500 | 601 Union Street, Suite 4100 |
| Seattle, WA 98104 | Seattle, Washington 98101-2380 |
| T:(206) 393-5400 | T: (206) 628-6600 |
| F: (206) 393-5401 | F: (206) 628-6611 |
| jessica.andrade@polsinelli.com | |
| | /s/ *Sean Patrick Roche* |
| Jay E. Heidrick | Sean Patrick Roche |
| (*Admitted Pro Hac Vice*) | William E. Evans |
| Elizabeth M. Marden | Admitted *Pro Hac Vice* |
| (*Admitted Pro Hac Vice*) | CAMERON/MCEVOY PLLC |
| POLSINELLI PC | 4100 Monument Corner Drive, Suite 420 |
| 900 W. 48th Place, Suite 900 | Fairfax, Virginia 22030 |
| Kansas City, Missouri 64112 | T: (703) 273-8898 |
| T: (816) 753-1000 | F: (703) 273-8897 |
| F: (816) 753-1536 | sroche@cameronmcevoy.com |
| jheidrick@polsinelli.com | wevans@cameronmcevoy.com |
| | |
| Randal S. Alexander | *Attorneys for Defendant Simply Wireless, Inc.* |
| (*Admitted Pro Hac Vice*) | |
| POLSINELLI PC | |
| 150 North Riverside Plaza, Suite 3000 | |
| Chicago, Illinois 60606 | |
| T: (312) 819-1900 | |
| F: (312) 819-1910 | |
| ralexander@polsinelli.com | |
| | |
| Melenie Van | |
| (*Admitted Pro Hac Vice*) | |
| POLSINELLI LLP | |
| Three Embarcadero Center, Suite 1200 | |
| San Francisco, California 94111 | |
| Telephone: (415) 248-2100 | |
| Fax: (415) 248-2101 | |
| mvan@polsinelli.com | |

*Attorneys for Plaintiff T-Mobile US, Inc.*

**ORDER**

Based on the foregoing, IT IS SO ORDERED.

DATED this 24th day of September, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE